Dunscomb v. Wallace.

DUNSCOMB v. WALLACE.

(*Jackson.* June 27, 1900.)

1. CHANCERY PLEADING AND PRACTICE. *Final decree upon pro confesso proper, when.*

An averment in a bill that a defendant had fraudulently received and converted property of complainant's debtor, who was likewise made defendant, "worth between three and four thousand dollars," is sufficiently definite to justify a final decree, upon *pro confesso*, without evidence or reference, against such fraudulent grantee, for a debt, described in the bill as a judgment against said debtor, for $803.05, dated May 23, 1892, being only about one-third the amount of the alleged liability of such fraudulent grantee. (*Post, pp. 386–392.*)

Cases cited: Ross v. Meek, 93 Tenn., 666; Haralson v. McGavock, 10 Lea, 719.

2. SAME. *Defendant entitled to benefit of denials of co-defendants answer, when.*

In a suit by a creditor to set aside a fraudulent conveyance of his debtor and to hold the fraudulent grantee liable for the value of the property, when the debtor answers on oath denying all fraud, there can be no decree upon *pro confesso* without proof against the fraudulent grantee, as he, in such case, is entitled to the benefit of his co-defendant's answer and denial. (*Post, pp. 392–397.*)

Cases cited: Simpson v. Moore, 5 Lea, 372; McDaniel v. Goodall, 2 Cold., 395; Cherry v. Clements, 10 Hum., 552; Hennessee v. Ford, 8 Hum., 500; Petty v. Hannum, 2 Hum., 102; Caldwell v. McFarland, 11 Lea, 467; Phillips v. Hollister, 2 Cold., 271;

21 P—25

Dunscomb *v.* Wallace.

Butler *v.* Kinzie, 90 Tenn., 31; Smith *v.* Cunningham, 2 Tenn. Ch., 573.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. Jno. L. T. Sneed, Ch.

Pierson & Ewing for Dunscomb.

Thos. H. Jackson and Boyle & Boyle for Wallace.

McAlister, J. The record in this cause presents a single question of chancery practice.

Complainant filed this bill alleging that on May 23d, 1892, he recovered a judgment before J. P. Young, Justice of the Peace, against Lymus Wallace for $803.05; that execution had been issued and returned *nulla bona.*

It is alleged that Wallace had transferred, in fraud of his creditors, to O. B. Polk, "a large number of drays and mules and harness worth about three or four thousand dollars;" that Polk after a short time transferred the same to A. J. Warwick, who conveyed the same to W. B. Gates; that after a short season said Gates transferred the property to N. H. Williamson, who, in December, 1897, transferred the same to J. A. Post.

It was alleged that the holding of said property by said Post was fraudulent, and that the alleged ownership of the property by Post was to place same beyond the reach of the creditors of Lymus Wallace.

It was alleged that in November, 1898, said Post transferred the property to Coates Bros., and that at the filing of the bill said Coates Bros. pretended to own the property.

A sworn answer was required, and the discovery sought material to this controversy was whether at the time of "the filing of the bill" any of the parties were indebted to said Wallace or knew of others who were so indebted to him, etc.

A decree was sought "against any of the defendants who may have at any time fraudulently colluded with the said Lymus Wallace, so that his property was placed beyond the reach of his creditors to their harm and detriment and to the prejudice of their rights."

September 1, 1899, the Clerk and Master entered a decree *pro confesso* against the defendant, Post. The other defendants all answered the bill under oath. Defendant Wallace, in his answer, denied that he had fraudulently concealed his property or been guilty of any scheme to hinder, delay or defraud his creditors, as claimed in the bill.

Wallace, in his answer, further states that about the 9th of May, 1893, defendant Warwick de-

sired to engage in the business of hauling cotton, and in order to do so he had to procure the necessary mules and drays, and that Warwick then purchased from Wallace all the mules, drays and harness he had, and used them in carrying on said business of hauling cotton, and that after this sale to said Warwick of said property, he (Wallace) had no interest whatever therein; that in carrying on the business of hauling cotton Warwick employed him (Wallace) at a salary.

Wallace denies that he had any interest in the property sold to Warwick after the sale, and denies that he had any interest in the business of hauling cotton carried on by Warwick.

He states in his answer that after carrying on the business of hauling cotton for some years, Warwick sold out the personal property used in the business, and successive sales were made by the different parties from time to time, so that different parties at different periods owned and carried on the business and the property used therein.

Wallace, in his answer, denies that he was engaged in any fraudulent scheme with any of the defendants in this case, or that any of the defendants held property for him or were engaged in any attempt to assist him in hindering, delaying or defrauding his creditors, and denies that he himself at any time was engaged in any such fraudulent scheme.

The other defendants, Polk, Williamson, Warwick, Gates and Coates, all answered under oath, and in their answers deny the frauds charged in the bill.

Defendant Williamson, who, it is averred in the bill, turned over the mules and drays and harness · to Post, says in his answer that about May 9, 1893, Wallace sold certain . stock, drays and harness to A. J. Warwick, and that about January 15, 1897, Warwick sold certain stock, harness and drays to W. B. Gates, and that thereafter the said Gates made the sale to him (Williamson); and he knows of no property held by any person belonging to Lymus Wallace.

The defendants P. S. and C. B. Coates, in their answer, state that on the 11th of November, 1898, they purchased of defendant Williamson certain drays and harness, and that when they purchased the property Williamson was in possession thereof as owner.

It will be seen from this sworn statement of Coates Bros. that Post never had anything to do with any of the property sought to be reached in the bill.

Coates Bros. deny that the property about which they answer was the same property that Lymus Wallace conveyed to A. J. Warwick. The latter, in his answer, states that he bought the property of said Wallace, and that he thereafter sold the same to W. B. Gates. O. B. Polk, in his an-

---

Dunscomb *v.* Wallace.

---

swer, avers there were no mules, drays, or harness transferred to him, but that he sold the notes secured by a trust deed on this property to A. J. Warwick. Further, defendant Gates says he knows nothing whatever as to any arrangement Lymus Wallace had with Post, Polk, Warwick, or any other person who had owned the dray . business.

On September 5, 1899, a decree was entered in the cause which recites that the complainant dismisses his bill as to the defendants O. B. Polk, A. J. Warwick, W. B. Gates, N. H. Williamson, C. B. Coates and P. S. Coates without prejudice. On the same day, without any evidence or any reference, another decree was entered as final, which is as follows:

"This day this cause came on for hearing and was heard before the Hon. John L. T. Sneed, Chancellor, upon the original bill, the agreement of Lymus Wallace filed herein on September 5, 1899, and the order *pro confesso* against J. A. Post, from all of which the Court doth here and now order, adjudge and decree that the complainant, S. H. Duncomb, have and recover of the defendants, Lymus Wallace and J. A. Post aforesaid, in the sum of $1,116.22, with interest from November 18, 1898, the date of the filing of the bill herein, $63.40, making a total of $1,179.62, and all costs of this cause not hereto-

Dunscomb v. Wallace.

fore otherwise adjudged, for which let execution issue as at law."

The defendant Post brought the case to this Court upon a writ of error. The first assignment is that the decree of the Chancellor is erroneous and should be reversed, for the reason that, upon a judgment existing against Lymus Wallace alone, it was adjudged that petitioner should be held for said judgment, with interest, when there is no evidence in the record, or allegation in any pleading to warrant a decree against petitioner for said amount or any other definite amount." The rule on this subject is stated in *Ross* v. *Meek,* 9 Pickle, 666, viz.: "Upon a *pro confesso* the allegations of the bill may be sufficient to warrant the rendition of a decree without more, as, when the action is based upon a note, or when they are sufficiently definite to fix not only the ground of the defendant's liability, but also the amount. If, however, the allegations are not sufficiently definite to fix the amount of liability, and proof or an account is necessary for that purpose, then the case stands for trial at the next term after the *pro confesso* is taken." See, also, *Haralson* v. *McGavock,* 10 Lea, 719.

The bill alleges that the transfer made by Wallace to Polk in 1891 consisted of a large number of drays, mules, and harness, worth about three or four thousand dollars. It is also stated that in 1894 Polk conveyed said property to War-

wick for the sum of $2,000. The bill then states
that Warwick, in about twelve months, conveyed
the property to W. B. Gates, and that after a
season Gates made a transfer of the mules, drays,
and harness to defendant Williamson, and that
Williamson, in December, 1897, transferred and
conveyed the mules, harness and drays to Post.
We think the allegation in the bill that the prop-
erty was worth between three and four thousand
dollars was sufficient. The decree was for only
one third of this amount. The *pro confesso* oper-
ated as an admission of the allegations of the
bill and that this valuation was correct.

The second assignment is, viz.: The decree of
the Chancellor was erroneous in adjudging any
liability at all against petitioner, for the reason
that the bill charged a fraudulent conveyance and
scheme entered into with defendant Lymus Wal-
lace to defeat the creditors of the latter. The
proposition presented by the bill involves the ele-
ment of fraud on the part of the debtor, Lymus
Wallace, and the participation therein by this de-
fendant. Wallace, who was called upon to answer
under oath, directly and positively denied the
commission of the fraud. The sworn answer of
Wallace was evidence in favor of his co-defend-
ants.

It was an indispensable condition of complain-
ant's right to a decree in this case that he
should establish fraud on the part of Wallace. It

Dunscomb v. Wallace.

is insisted, however, by complainant's counsel that, with an acknowledgment of indebtedness by Wallace and a *pro confesso* against the fraudulent grantee, Post, and an admission of all allegations against him, complainant was legally entitled to a decree.

We do not think so. We are of opinion that the answer of Wallace under oath, denying all the allegations of fraud, inured to the benefit of Post and was evidence in the cause.

It is insisted by counsel for appellee that this case does not fall within the class of cases in which the answer of one defendant inures to the benefit of another. Counsel cite the case of *Simpson* v. *Moore.* 5 Lea, 372, viz.: "In that case there was a bill filed to enforce a lien for unpaid purchase money of a tract of land. It alleges a sale by Carter to Moore, Redenhour, and Wells. Certain facts were alleged against Moore, Wells, and Maloney (who took Redenhour's place in the purchase), whereby they were sought to be made liable upon certain representations they were alleged to have made, whereby the complainant was led to purchase the note, and that these admissions estopped them from denying the existence of a lien on the land or setting up a defective title as defense.

"Two of the defendants answer and make successful defense, while a *pro confesso* was taken against Maloney.

"Maloney took the case to the Supreme Court by writ of error, and made the same insistence as is here and now made for Post, to wit, that 'the defense of one co-defendant will inure to the benefit of all when such defense disproves the equity against all the defendants.'"

The Court held that the defense made by Moore and Redenhour (who became Wells' administrator) did not help Maloney, using the following language:

"But in this case Moore and Redenhour answered and denied the allegations of the bill, and this Court was of opinion that the evidence did not sustain the charges made against them. But Maloney . stands as if every charge made was established by proof, and we are bound so to regard the case. Their defenses, therefore, although the same, are personal to each, and Moore and Redenhour are discharged from liability, because the case made in the . bill against them is not made out by proof. Maloney is charged, because in legal effect he admits the allegations of the bill, and is thereby estopped to deny his liability." *Simpson* v. *Moore,* supra, 376, 377.

We think the case at bar is easily distinguishable from the case cited. This is a joint suit against the fraudulent grantor and fraudulent grantee. It is a legal solecism to speak of a fraudulent grantee without a fraudulent grantor. There may be a fraudulent grantor without a fraudulent

Dunscomb v. Wallace.

grantee, but the converse of this proposition is not true. If there was no fraud on the part of the grantor, how can there be fraud on the part of the grantee?

In order to obtain a decree against Post, it must be shown that Wallace was guilty of fraud which was participated in by Post. The relation they bear to each other in such a transaction is indissoluble. The answer of Wallace is responsive to the bill, and denies all its material allegations. It is both a pleading and a deposition, the oath not having been expressly waived. The early case of *Glason* v. *Morris,* 10 Johnson (N. Y.), 525, announces the rule, viz.: "That when a bill in chancery is filed against two defendants jointly interested, and the bill is taken for confessed against one of them for want of appearance, and the other appears and disproves the plaintiff's case, the bill will be dismissed as to both defendants."

In the case of *McDaniel* v. *Goodall,* 2 Cold., 395, the Court said: "It is a well-settled principle of this Court, if a joint defendant answer a bill and remove the equity set up against himself and the other defendant, who does not answer, no decree can be rendered against the defendant failing to answer." Citing *Cherry* v. *Clements,* 10 Hum., 552; *Hennessee* v. *Ford,* 8 Hum., 500. In the 8 Hum. case, Judge Green says:

"But it is said that the bill has been taken for confessed as to Little, and the complainant is entitled to a decree against him, although he may be repelled as to the other defendants who have answered. We think that when a joint defendant answers a bill, and by poorf removes the matter of equity set up against him and the other defendants who do-not answer, there can be no decree against the defendant so failing to answer." Citing *Glason* v. *Morris,* 10 Johnson, 525. In *Petty* v. *Hannum,* 2 Hum., 102, Judge Turley announces the same rule, and cites in support of the statement *Glason* v. *Morris.*

It was held in *Caldwell & Hays* v. *McFarland,* 11 Lea, 467: "Where some of the parties did not answer in the case, and had orders *pro professo* taken against them, others answered, however, and the case made by the record clearly removes all equity set up by Caldwell and Hays, and all being tenants in common of the land, there being shown, beyond doubt, no existing right whatever in the bill of Caldwell and Hays, we think it a proper case for the application of the rule that where two defendants are jointly interested or joint defendants answer and meet all the equities of the bill, and this is sustained by the proof, no decree should be entered against those not answering."

The case of *Smith* v. *Cunningham,* 2 Tenn. Ch., 573, contains a full discussion of the ques-

Dunscomb *v.* Wallace.

tion. The Tennessee cases upon this question are: *Petty* v. *Hannum,* 2 Hum., 102; *Hennessee* v. *Ford,* 8 Hum., 500; *Cherry* v. *Clements,* 10 Hum., 552; *McDaniel* v. *Goodall,* 2 Cold., 395; *Caldwell & Hays* v. *McFarland,* 11 Lea, 467; *Phillips* v. *Hollister,* 2 Cold., 271; *Butler* v. *Kinzie,* 6 Pickle, 31; *Smith* v. *Cunningham,* 2 Tenn. Ch., 573.

Without pursuing the subject further, we are of opinion the decree of the Chancellor is erroneous. It is therefore reversed and the complainant's bill is dismissed as to defendant Post, with costs.