J. A. SEWELL v. TUTHILL & PATTISON.

(*Nashville.*   December Term, 1903.)

1. **PLEAS IN ABATEMENT.** Pleading over upon adverse action
   to, when and when not. prior to Acts 1897, ch. 121.
   Prior to Acts  1897, ch, 121, the rule was, both at law and in
   equity that on striking out a plea in abatement, as frivolous or
   overruling it on demurrer, or when it was held insufficient, the
   defendant had the right to plead over; but where the issue
   tendered by the plea was tried on the merits, and the issue
   was found against the plea, there could be no further pleading,
   but plaintiff was entitled to judgment on the merits of his de-
   mand.   (*Post, p.* 276.)

Cases cited and approved:   Simpson v. Railroad, 89 Tenn., 304-
.  308; Rogers v. O'Mary, 95 Tenn., 514, 518, 519.

2. **SAME.** And in bar at the same time under Acts 1897, ch. 121.
   Under Acts 1897, ch. 121, a plea in abatement and a plea in bar
   or to the merits may be filed at the same time, and the plea in
   bar will not overrule the plea in abatement. (*Post, pp.* 277-282.)

Acts cited and construed:   1897, ch. 121.

Case cited and approved:   Railroad v. McCollum, 105 Tenn., 623.

3. **SAME.** Pleading over after judgment against, in all cases
   under Acts 1897, ch. 121.
   The defendant may plead over to the merits under Acts 1897, ch.
   121, upon the rendition of a judgment against his plea in abate-
   ment, either upon motion to strike out, or upon being set down
   for argument upon its sufficiency, or upon demurrer, or upon an
   issue as to its merits.   (*Post, pp.* 277-282.)

Acts cited and construed:   1897, ch. 121.

Sewell v. Tuthill & Pattison.

4. SAME. Same. Judgment may be rendered upon overruling, if leave to plead over is not asked for.

To put the lower court in error for entering judgment on the merits, upon overruling a plea in abatement, it must affirmatively appear that application was made for leave to plead over, and that it was refused. (*Post, pp.* 275-276, 280-282.)

Code cited and construed: Sec. 6179, subsec. 4 (S.); sec. 5112, subsec. 4 (M. & V.); sec. 4369, subsec. 4 (T. & S. and 1858).

Acts cited and construed: 1897, ch. 121.

Case cited and approved: Ross v. Meek, 93 Tenn:, 666.

. Case cited: McBee v. State, Meigs, 123.

Case cited and disapproved: Kendrick v. Davis, 3 Cold., 524.

5. STATUTES. To be enforced by the courts when constitutional, regardless of hardships.

It is the duty of the courts to obey and administer the acts of the legislature, when they are constitutional, however great the hardships may be that will flow from them. It is the duty of the courts to ascertain the meaning of .acts, and then enforce them. (*Post, p.* 279.)

Acts cited and construed: 1897, ch. 121.

6. SAME. In derogation of common law, must be strictly construed.

The statute (Acts 1897, ch. 121) providing that upon overruling a plea in abatement for any cause, the defendant may plead over to the merits, is in derogation of the common law, and must be strictly construed. (*Post, pp.* 277, 280, 282.)

Acts cited and construed: 1897, ch. 121.

7. PRO CONFESSO. Should be entered before final decree, but its omission is not reversible error.

The order *pro confesso* is a very proper form and should be taken and entered prior to taking and entering a final decree; and

Sewell v. Tuthill & Pattison.

while the failure to take it is error, yet it is not an error affecting merits, and therefore, under our statute, is not reversible error because it is a mere matter of form, and really adds nothing essential to the case, which may be treated as if such order *pro confesso* had been entered as in the case of amendments. (*Post, pp.* 282-284.)

Code cited and construed: Sec. 6351 (S.); sec. 5268 (M. & V.); sec. 4516 (T. & S. and 1858).

Cases cited and approved: Cornelius v. Merritt, 2 Head, 98; McBee v. Petty, 3 Cold., 178; Brooks v. Gibson, 3 Shannon's Cases, 760; Ross v. Meek, 93 Tenn., 666, 668, 669; Cowan v. Donaldson, 95 Tenn., 322.

**8. SAME.** Warrants decree without proof when allegations of bill are sufficient, otherwise proof is required.

A bill confessed with distinct and positive allegations sufficiently definite to fix not only the ground of the defendant's liability but also the amount, warrants the rendition of a decree, without proof, but where the allegations are indefinite, or the demand of the complainant is, in its nature, uncertain, the certainty requisite to a proper decree must be afforded by proofs, and the case stands for trial upon proof to be taken. (*Post, pp.* 284-288.)

Cases cited and approved: Haralson v. McGavock, 10 Lea, 719; Ross v. Meek, 93 Tenn., 666; Dunscomb v. Wallace, 105 Tenn., 385; Williams v. Corwin, Hopk. Chy., 471, 476.

**9. SAME.** Same. Case in judgment.

A bill alleging that defendant is indebted to complainant in the sum of five hundred dollars, accruing from the breach of a contract to buy lumber, without stating the quantity and price of the lumber, with like indefinite statements as to the amount and value of the lumber taken but not paid for, undergrading, etc., though confessed, does not warrant a decree without proof making such allegations more definite. (*Post, pp.* 284-288.)

112 Tenn—18

## FROM CUMBERLAND.

Appeal from the Chancery Court of Cumberland County.—D. L. LANSDEN, Chancellor.

OWINGS & NICHOLAS, for complainant.

CHARLES C. TRABUE, W. R. KING, J. W. DORTON and GEO. P. BURNETT, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

This was an original attachment suit brought in the chancery court of Cumberland county to recover $500 alleged to be due to the complainant from the defendants by reason of the breach of a contract for the sale of certain lumber. An attachment was regularly issued as prayed for in the bill on the sixtetnth of March, 1903, and on the next day was by the sheriff of Cumberland county regularly levied upon certain lumber.

On the twenty-eighth of April the defendants filed a plea in abatement, in which they averred that none of the property levied on under the writ of attachment belonged to them at the time the bill was filed or attachment levied, and that none of it belonged to them at any time after the filing of the bill. They thereupon prayed that the attachment be quashed, the property released, and the suit dismissed.

Sewell v. Tuthill & Pattison.

The complainant filed a replication, in which he joined issued on the plea in abatement.

The testimony was taken, the cause heard, and the chancellor found the issue against the plea, and over-ruled it. In the same entry he decreed that the lumber was the property of the defendants at the time of the levy of the attachment, and rendered judgment in favor of the complainant and against the defendants for the $500 sued for, and directed that the judgment be satisfied by a sale of the lumber attached.

From this judgment the defendants appealed, and assigned errors.

The case was referred to the court of chancery appeals, and there heard.

The court of chancery appeals found as a fact that the lumber was the property of the defendants, and so sustained the decree of the chancellor upon this point, and also in respect of rendering judgment for the amount sued for and ordering a sale of the property. In respect of this matter the court of chancery appeals, in their opinion, says: "It will be noted from the above that on overruling the plea in abatement the chancellor immediately gave judgment for the amount sued for. Under the act of 1897 the defendants would have been entitled to plead over or to make defense upon the merits of the case. But while the decree does not show that the defendants refused to plead over, neither does it appear that they asked leave to plead over, or to make other or further defense, nor that they excepted

to the action of the chancellor in entering judgment upon overruling the plea in abatement. But they appear to have immediately prayed an appeal. We therefore assume that the defendants did not desire to make other or further defense, but elected to rest their defense upon this issue alone; and, not having asked leave to plead over, and not having excepted to the action of the chancellor, and having assigned no error upon this subject in this court, there remains nothing for the court to do but to affirm the decree of the chancellor."

The action of the court of chancery appeals in thus affirming the decree of the chancellor without allowing time to plead over is made the first ground of exception in this court to the decree of the court of chancery appeals. Prior to Act 1897, p. 277, c. 121, the rule was, both at law and in equity, as follows:

On striking out a plea in abatement as frivolous, or overruling it on demurrer, or when it was held insufficient, the defendant had the right to plead over; but where the issue tendered by the plea was tried on the merits, there could be no further pleading, but plaintiff was entitled to judgment on the merits of his demand. *Simpson* v. *Ry. Co.*, 89 Tenn., 304-308, 15 S. W., 735; *Rogers* v. *O'Mary*, 95 Tenn., 514, 518, 519, 32 S. W., 462.

In 1897, however, the following act was passed (chapter 121, p. 277, of the Acts of that year):

"An act to permit a defendant to plead to the merits in any suit where a plea in abatement has been over-

Sewell v. Tuthill & Pattison.

ruled, and to permit a plea in bar to be filed at same time of filing plea in abatement, and provide how the issues are to be tried.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that a defendant has the right, upon the overruling of a plea in abatement, for any cause filed by him to any action, to plead to the merits, and rely upon any defenses as if said plea had not been interposed.

"Sec. 2. Be it further enacted, that a defendant can, in any suit, plead both in abatement, and in bar, at the same time, and that said plea in bar is no waiver of the plea in abatement, and when so pleaded, both pleas shall be heard at the same time and judgment rendered on each plea.

"Sec. 3. Be it further enacted, that this act take effect from and after its passage."

We are not aware that there is any published case construing this statute, and our researches have failed to disclose any, except *Railroad* v. *McCollum,* 105 Tenn., 623, 59 S. W., 136.

It was there held that a plea in abatement and a plea to the merits might be filed at the same time, and that the latter would not overrule the former, and the form of the verdict and judgment, proper in such a case, was indicated. Nothing, however, appears in that authority upon the precise point which we now have before us.

It is insisted that the words "overruled" and "overruling," appearing in the statute above quoted, should

Sewell v. Tuthill & Pattison.

be given a strict technical construction; that is to say, that the court should hold that upon the overruling of a plea in abatement, when set down for hearing on its sufficiency, or when heard on demurrer, or on a motion to strike out, or in any form testing its sufficiency, then that the defendant should be allowed to plead over; but that it should not be held as covering the case of the trial of a plea in abatement on its merits under an issue as to the truth of its averments.

It is insisted that, to give the act the latter construction, would be against sound policy, inasmuch as trials would be unreasonably long and vexatious, for the reason that the plaintiff would be put to the trouble, expense, and delay of two trials—one upon the issue made on the plea in abatement, and the other upon the merits of the cause.

The reason given in our earlier cases for the common-law rule was that when the defendant filed a plea in abatement, instead of answering to the merits, this was tantamount to an admission that he had no meritorious defense.

Another reason given was that the court ought not to be required to go through two trials concerning the same matter. Still another reason might be given to the following effect: It might be well said that when the defendant has been summoned to appear at court on a given day, and fails to put in an appearance within the time required by law, he stands in default; that is, if he be properly brought into court by the process. If

Sewell v. Tuthill & Pattison.

he choose to contest this latter fact, and it is adjudged against him— that is, it is found that he has been properly served, and is properly in court—the day for appearance having passed, he stands in default as of the day when he should have put in an appearance, and can not justly claim any clemency from the court; and that the court, in view of the time that will neceessarily be consumed in two trials upon the same matter, may rightly refuse to hear him further.

We very much doubt the policy of setting aside the common-law rule. That rule was founded in wisdom and justice. It is true that hardships might arise under it, and perhaps did sometimes arise. Every hardship, however, that could arise under the common-law rule was mitigated by so much of the statute as allowed a plea in abatement and a plea in bar to be filed and heard together. If it be a true construction of the other portion of the statute, that there may be a hearing on the merits of the cause after a decision against the plea in abatement on an issue as to the merits of its averments, then all of the delay and vexation which the common-law rule sought to avoid is brought back upon the litigants of the country.

Still it is the duty of the court to obey and to administer the acts of the legislature when they are constitutional, however great the hardships may be that will flow from them. It is our duty to ascertain the meaning of an act, and then to enforce it.

Now, will the act bear the meaning which the com-

plainant's counsel insists upon? We think not. It was evidently the purpose of the legislature to make a change in the existing law in respect of the effect of the adverse action of courts upon pleas in abatement. If the contention of complainant be a sound one, then there was no change made, and the first section of the act is merely nugatory, being only an announcement of the pre-existing law. We think that this section must be given the meaning contended for by the defendants, and it seems to have been conceded by the court of chancery appeals, viz., that upon a judgment being rendered against a plea in abatement, either upon motion to strike out, or upon being set down for argument upon its sufficiency, or upon demurrer, or upon an issue as to its merits, the defendant has the right to plead over. Yet, inasmuch as the statute is in derogation of a common-law rule, it must be strictly construed.

We are therefore of the opinion that the court of chancery appeals was correct in holding that, to put the judge of the lower court in error, it must affirmatively appear that application was made for leave to plead over, and that it was refused.

It is insisted that the same rule should apply that governs when a demurrer is overruled, and we are referred to Shannon's Code, section 6179, subsection 4, to the effect that when a plea or demurrer is overruled, and the defendant ordered to answer, and he fails to do so upon a rule given, then an order *pro confesso* may be taken. It is insisted that in such case there can be no

order *pro confesso* taken, unless the defendant has either announced a refusal to answer, or such refusal shall be shown by his failure to answer upon a rule given; that is, within the time fixed by the court.

In the case of *Ross* v. *Meek,* 93 Tenn., 666, 28 S. W., 20, it is said that the subsection of the Code above cited, in so far as applied to demurrers, had reference to cases in which the complainant desired to compel an answer from the defendant, and in which the court, for that purpose, had ordered an answer to be filed, and fixed a rule-day limit occurring after the close of the pending term; and that in such a case, if the defendant should fail to answer by said rule day, the complainant might take his bill for confessed, and the cause should then stand for hearing at the next term. But, said the court: "When the decree overruling the demurrer makes no order for an answer, the defendant has the privilege, under the statute, to answer at once, or at such time as the court may permit; but in this case the defendant answers under the general provisions of the law, and not in consequence of any order of court compelling an answer, and, if he fails to answer or obtain time, the *pro confesso* can be taken forthwith." The same rule necessarily applies, under this construction of the subsection of the Code above mentioned, to the case of a plea overruled for insufficiency.

We are referred to *McBee* v. *The State,* Meigs, 123, as supporting a different rule. Without going into a discussion of that case, it is sufficient to say that the con-

struction appearing in the later case of *Ross* v. *Meek*, above referred to, involving the same principle, would control.

We are referred also to *Kendrick* v. *Davis*, 3 Cold., 524. It is conceded that this case was decided incorrectly upon the main point involved, but it is insisted that it lays down the practice correctly in the kind of case we have before us. That case is not binding authority upon the point referred to. Having been erroneously decided upon the cardinal point under examination, out of which the question of practice arose, we could hardly rely upon it as an authority stating what the true practice would have been on the assumption that the case was correctly decided, when it is rightly conceded that the assumption is itself incorrect.

We deem the reasons above given for the strict construction of the statute of 1897 sound ones, and in the interest of public justice, and we cannot weaken that construction by doubtful inferences from sections of the Code enacted for another class of cases, or from decisions not fully applicable to the questions involved.

It is next insisted that the court of chancery appeals and the court below were in error in that no order *pro confesso* was entered prior to taking a final decree.

It is certainly true that an order *pro confesso* should have been taken, and the case of *Cowan, McClung & Co.* v. *Donaldson,* 95 Tenn., 322, 32 S. W., 457, cited by counsel for complainant, is not an authority to the contrary, as shown by its reference to the case of *Ross* v. *Meek*,

93 Tenn., 666, 668, 669, 28 S. W., 20. In the case in 95 Tenn., 32 S. W., it is true the court did not mention the order *pro confesso* in terms, as it frequently does not mention intermediate steps or formal action in courts that may be readily inferred from the context. The court did not mean by that decision to be understood as holding that the entry of an order *pro confesso* was not the proper practice where a demurrer had been overruled. and the defendant had interposed no answer, nor asked further time to make defense.

The failure to take an order *pro confesso* was error, but it was not reversible error, because it is a mere matter of form; and Shannon's Code, section 6351, provides that "no judgment, decision, or decree of the inferior court shall be reversed in the supreme court, unless for errors which affect the merits of the judgment, decision, or decree complained of." The order *pro confesso* is a very proper form, but it really adds nothing essential to the case. All of the effect of which it is capable may be obtained by treating the case as if such order had been entered as in case of amendments. On this latter subject, see *McBee* v. *Petty*, 3 Cold., 178. The case of *Cornelius* v. *Merritt*, 2 Head, 98, also furnishes a useful analogy. In that case, as it appeared in this court, no issue had been made in the court below, yet this court refused to reverse on that ground, treating it as a matter of form under the Code. We should also add that there is one case in this State in which it has been expressly held that the court would not reverse on account

of the absence of an order *pro confesso, Brooks* v. *Gibson*, 3 Shannon's Tenn. Cas., 760.

Treating the case, then, as if in order *pro confesso* had been entered, we pass to the next point, which is that the bill is not sufficiently definite to base a decree upon without the aid of testimony.

The bill is brief, and contains the following allegations:

"Complainant respectfully shows to the court that the defendants are justly indebted to him in the sum of five hundred dollars.

"Said indebtedness accrued in the following manner: On the seventeenth day of January, 1902, complainant entered into a written contract with the defendants for the sale of certain lumber belonging to complainant in the county of Cumberland, and State of Tennessee, a true copy of which contract is hereto attached, marked 'Exhibit A,' and prayed to be taken and treated as a part of this bill. A portion only of the lumber sold and covered by said contract was shipped, and paid for by the defendants, and complainant charges that the defendants breached their contract in the following particulars: They failed and refused to take and pay for all the lumber covered by the contract. The lumber was loaded on the yard under the supervision of W. H. Pierce, the agent of defendants, was hauled to the railway station at Daysville, Tennessee, and shipped to defendants, who did not account for all the lumber; and

what they did' account for and pay for was graded not in accordance with the contract, but was graded and remitted for at grades far below the actual and real grade of said lumber, and the prices paid were far below the prices agreed to be paid for the same; and wherefore, and by reason of said breach of said contract, as above stated, complainant was damaged in the sum of $500, and the defendants became and are indebted to complainant in the said sum of $500, all of which is due and unpaid."

Exhibit A was not really filed with the bill.

The question now to be determined is whether the foregoing allegations of the bill are sufficient to warrant a decree under an order *pro confesso*. The rule upon this subject is thus laid down in *Ross* v. *Meek,* 93 Tenn., 666, 28 S. W., 20:

"Upon a *pro confesso* the allegations of the bill may be sufficient to warrant the rendition of a decree without more; as, when the action is based upon a note, or when they are sufficiently definite to fix not only the ground of the defendant's liability, but also the amount. If, however, the allegations are not sufficiently definite to fix the amount of liability, and proof or an account is necessary for that purpose, then the case stands for trial at the next term after the *pro confesso* is taken."

See, also, *Haralson* v. *McGavock,* 10 Lea, 719, and *Dunscomb* v. *Wallace,* 105 Tenn., 385, 59 S. W., 1013.

In *Williams* v. *Corwin,* Hopk. Ch., 471-476, the rule is thus laid down:

"When the allegations of a bill are distinct and positive, and the bill is confessed, such allegations are taken as true, without proof. Where the allegations of a bill are indefinite, or the demand of the complainant is, in its nature, uncertain, the certainty requisite to a proper decree must be afforded by proofs. The bill, when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty; but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court require an examination of details, the obligation to furnish proofs rests on the complainant."

We shall now test the allegations of the bill by the rule stated.

It is clear that if the bill had merely contained the allegation "that the defendants are justly indebted to him in the sum of $500," this would not have been sufficient, for the reason that it would state a mere conclusion of law, without any facts to base it on. The court, from such a statement, could not see whether the indebtedness was based upon a note or other contract.

The real allegations, therefore, are those beginning with the words "said indebtedness accrued in the following manner." It is impossible, however, from reading the language which follows, quoted above, to ascertain the amount of the alleged debt with any degree of definiteness. As already stated, the exhibit called for was not filed, therefore the amount of lumber did not appear, nor the prices for which the parties had con-

tracted.    It is said that a portion only of the lumber was shipped and paid for.    How much that portion was does not appear.    It is said they failed and refused to take and pay for all of the lumber covered by the contract, but how much lumber was embraced in the word "all" does not appear.    It is also said that the defendants did not account for all of the lumber that was shipped to them; but how much was shipped does not appear.    It is also said that what they did account for was graded far below its actual and real grade, and the prices were far below the prices agreed to be paid therefor, but what the true grade was is not stated, and how much below the true grade the lumber in question was graded does not appear, nor does it appear what the prices were that were paid for the lumber, nor the prices agreed upon, nor the difference between these two prices. The specifications are entirely indefinite.    Putting the most liberal construction upon the bill of which it is capable, it is that the defendants are indebted to complainant in the sum of $500, by reason of the indefinite and undefined matters above referred to.    It is impossible for the court to determine with any certainty the amount of indebtedness that arose under the allegations referred to.

It was essential, therefore, that these matters should be made more definite by proof, and it results that the order *pro confesso* did not justify a decree for the amount claimed.

We are of the opinion, therefore, that the judgment of the court of chancery appeals must be modified in so

far as it fixes the amount of the liability and the cause must be remanded for proof on this point.

It is not necessary to consider the other errors as signed.