THREE STATES LUMBER COMPANY *et al. v.* H. B. BLANKS.

## (*Jackson.*   April   Term,   1907.)

1. **VERDICTS.** Controverted questions of fact are settled by verdict and judgment, when reviewed on appeal.

   In the examination of the evidence on appeal, the supreme court will accept that view of the case ·most favorable to the party in whose favor all controverted questions of fact were settled by the verdict of the jury and the judgment thereon. (*Post, p.* 631.)

2. **REPLEVIN.** Judgment is not a bar for excessive levy an conversion, when.

   A judgment in an action of replevin is not a bar to a subsequent action by the defendant against the plaintiff for an excessive levy made by the officer at the instance of the plaintiff and for a conversion by the plaintiff, because in the replevin suit, the question of the plaintiff's trespass in taking and converting other property is not involved, and cannot be adjudicated. (*Post, pp.* 634-637.)

   Code cited:   Sec. 5144 (S.); sec. 4126 (M. & V.); sec. 3390 (T. & S. and 1858).

   Cases cited and approved:   Kramer v. Matthews, 68 Ind., 172; Hall v. Durham, 113 Ind., 327.

   Cases cited:   Arnold v. Kyle, 8 Bax., 319; Cromwell v. Co. of Sac, 94 U. S., 351.

3. **SAME.** Same. Nor is judgment for defendant for value of quantity above what plaintiff recovers a bar for excessive levy and conversion thereunder.

   Where in an action of replevin for a specific quantity of lumber, it is adjudged that plaintiff is entitled to a less quantity than that sued for and levied on under the writ, and a judgment is rendered in favor of the defendant for the value of the excess

so sued for and levied on, such judgment is not a bar to a subsequent suit by the defendant against the plaintiff for an excessive levy made by the officer at the instance of the plaintiff and for a conversion by the plaintiff because the question as to excessive levy and conversion thereunder is not involved in the re-replevin suit. (*Post, p.* 637.)

See citations under the second headnote:

4. **SAME.** Same. Same. **Unsuccessful suit against officer for excessive levy is no bar to suit against the plaintiff for conversion.**

An unsuccessful suit against an officer and his sureties, on their bond, for an excessive levy and wrongfully taking possession of property in excess of the quantity called for in the writ of replevin is not a bar to a subsequent suit against the plaintiff in the replevin suit for the conversion of property procured by him to be levied on under a writ of replevin, but not specified or called for in the writ. (*Post, pp.* 637-643.)

Cases cited and approved: Lovejoy v. Murray, 3 Wall, 1; Litchfield v. Goodnow, 123 U. S., 551; Ayer v. Ashmeed, 31 Conn., 447.

Cases cited and distinguished: Hennessee v. Ford, 8 Humph., 500; Phillips v. Hollister, 2 Cold., 271; Butler v. Kinzie, 90 Tenn., 31; Dunscomb v. Wallace, 105 Tenn., 386.

5. **EVIDENCE.** Statements by agent as explanatory of his possession are admissible against his principal, when.

Where property is wrongfully levied on under a writ of replevin, because not embraced in the writ, and the same is placed in the charge of a third party by the plaintiff in the replevin suit as his representative, all that such third party said explanatory of his possession and why the property could not be taken away is admissible in evidence in an action by the defendant in the replevin suit against the plaintiff therein for the conversion of such property so wrongfully levied on to show that the defendant who was the plaintiff in the replevin suit was claiming the exclusive custody of all the property, though the statements were made sometime after the levy. (*Post pp.* 643-645.)

Lumber Co. v. Blanks.

Cases cited and approved: Mining Co. v. McMahon, 1 Head, 582;
Insurance Co. v. Booker, 9 Heisk., 607; Gavin v. Walker, 14 Lea,
646; Packet Co. v. Clough, 20 Wall., 540; Railroad v. O'Brien,
119 U. S., 99.

6. **SAME.** Stated and held sufficient to sustain finding of con-
version.

In an action for the conversion of property wrongfully levied on
under a writ of replevin, the evidence is stated and held suffi-
cient to sustain the finding of the verdict that the defendant,
who was the plaintiff in the replevin suit, took charge of the
property so wrongfully levied on, and put it in the charge and
custody of his agent and thus converted it to his own use. (*Post,
pp.* 645-649.)

Cases cited and approved: Bell v. Cummings, 3 Sneed, 275;
Scruggs v. Davis, 5 Sneed, 261; Childress v. Ford, 1 Heisk, 463;
Elmore v. Brooks, 6 Heisk., 45.

7. **CHARGE OF COURT.** Refusal of special request is not error,
where there is no evidence to which it is applicable.

In an action for conversion by a wrongful levy and taking pos-
session of a whole barge of lumber under a writ of replevin,
but in excess of the amount called for in the writ, there is no
error in the refusal of the court to charge a special request
that, if the inclemency of the weather prevented the separation
of the lumber, defendant was not liable, where there was no
evidence that the weather was so inclement when the barge of
lumber was levied on that the lumber could not be separated,
especially where the weather was not inclement when the levy
was made, and no such condition prevailed for several days
thereafter. (*Post, pp.* 649, 650.)

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.—
J. P. YOUNG, Judge.

W. A. PERCY, for Lumber Company.

TIM E. COOPER, for Blanks.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff below, H. B. Blanks, recovered a verdict and judgment against the Three States Lumber Company for the sum of $2,176.80 as damages for the conversion of a lot of lumber. The Three States Lumber Company appealed from said judgment and has assigned errors. There is no assignment of error on the sufficiency of the facts to support the judgment, but questions of law only are sought to be reviewed on this appeal. The claim of the plaintiff below is substantially set forth in the second count of the declaration as follows:

"The plaintiff avers that the said defendant on or about January 20, 1902, sued out a writ of replevin in the circuit court of the United States at Memphis for the recovery of 250,000 feet of lumber then in possession of the plaintiff, which writ came in possession of the defendant G. W. Hawkins, who was a deputy United States marshal; that the defendants, the Three States Lumber Company and said Hawkins, seized a barge load of lumber under said writ on the 21st of January, 1902, containing 425,000 feet of lumber, the property of the plaintiff, and did not separate the 250,-000 feet of lumber for which the writ of replevin had

been issued, but unlawfully and willfully took the whole barge load of lumber and unlawfully converted to their own use 175,000 feet of cottonwood lumber, of the value of $3,000."

We shall only make such statement of the facts as is necessary to illustrate and apply the many interesting and complicated questions of law which the ability and ingenuity of counsel have assigned on this appeal. In the examination of the evidence the court will accept that view of the case most favorable to the judgment plaintiff, since all controverted questions of fact have been settled in his favor by the verdict of the jury.

There is evidence tending to show that the plaintiff, Blanks, at the time of these transactions was operating a sawmill in Lake county, Tennessee, near Reel Foot Landing, on the Mississippi river. The land occupied by the plaintiff, Blanks, adjoined a large body of cottonwood timber land owner by the Three States Lumber Company. It appears that the boundary line between these adjoining proprietors had not been accurately surveyed, and the hands of the plaintiff, Blanks, in cutting timber, got upon the premises of the Three States Lumber Company and cut some of its cottonwood timber, which was carried to the sawmill of Blanks and converted into lumber, making about 15,000 feet. In January, 1902, the Three States Lumber Company sued out a writ of replevin in the Circuit Court of the United States for the Western District of Tennessee to recover the lumber manufactured from its trees, alleging the

amount to be 250,000 feet, which was described in the writ as being in Blanks' lumber yard. It appears that, when the Three States Lumber Company sued out its writ of replevin, Blanks had made an executory sale of a barge load of lumber to the Cairo Lumber Company, and was loading it on the barge for the purpose of making delivery under this contract.

It appears that prior to the levy Blanks had caused to be loaded on the barge about 430,000 feet of lumber, and that at the instance of one Scroggins, who was on the ground as the agent of the Three States Lumber Company, the deputy marshal seized the whole barge and turned it over to Scroggins as the representative of that company. It further appears that the marshal, after levying the writ, did not undertake to separate the 250,000 feet of lumber called for by his writ from the remainder of the barge load, but left it all in the custody of Scroggins, and there is evidence that Scroggins afterwards said that he did not want the separation made, since it would cost too much money and trouble. The record reveals that at the time this levy was made the barge, which belonged to the Cairo Lumber Company, was in charge of its watchman, and Scroggins employed this watchman to maintain the possession of this barge load of lumber for and on behalf of the Three States Lumber Company. It was shown that in consequence of this levy the executory contract between Blanks and the Cairo Lumber Company for the purchase of this lumber was not consummated, but was abandoned. It

is in proof that the watchman of this barge load of lumber was interdicted by Scroggins from permitting this barge load of lumber being forwarded to Cairo by any of the tugboats passing up the river. It appears that after the lapse of several days, and while the actors in this transaction remained in a state of masterly inactivity, a heavy storm of rain and sleet descended on the barge, and by reason of the additional weight caused by the frozen condition of the sleet and rain the barge and contents were sunk in the Mississippi river. This sunken barge, it appears, was afterwards raised at the instance of the Three States Lumber Company; all the lumber being recovered and transported by said company to Cairo, Illinois. The barge and lumber were subsequently libeled in the District Court of the United States for the Southern District of Illinois by the Three States Lumber Company. Process was issued and mailed to Blanks in accordance with the practice in such cases. He did not, however, enter his appearance, and under the libel of the Three States Lumber Company salvage was allowed amounting to the sum of $1,833.29. As the result of this judgment the lumber was sold and purchased by the Smith Lumber Company, many of whose stockholders were equally interested in the Three States Lumber Company. Subsequently to all of these proceedings the replevin suit already mentioned was prosecuted to judgment in the circuit court of appeals. In that cause the defendant, Blanks, had tendered 15,000 feet of lumber, and this

tender was maintained by the court, and it was adjudged that the Three States Lumber Company was not entitled to recover of Blanks the remaining 235,000 feet of lumber claimed. A judgment, moreover, was awarded Blanks for the value of the 235,000 feet of lumber seized by the writ, amounting to $3,061.11, and this amount was paid by the Three States Lumber Company. It further appears that on the 16th of May, 1902, Blanks, after the sinking of the barge, brought suit on the bond of Thos. H. Baker, United States marshal, for damages sustained in seizing the whole barge load of lumber under the writ of replevin, instead of taking only 250,000 feet, as he was directed to do. As already stated, this excessive levy was made by the defendant G. W. Hawkins as the deputy marshal under said Baker. That suit resulted in a judgment in favor of Baker. On the 24th of June, 1903, this suit was brought to recover damages against the Three States Lumber Company for the unlawful conversion to their own use of 175,000 feet of cottonwood lumber, and, as already stated, the trial below resulted in a judgment in favor of Blanks for the sum of $2,176.80. This is a substantial statement of the facts appearing in the record, but other facts will be more appropriately stated under the assignments of error.

The first assignment is that the court erred in sustaining the plaintiff's demurrer to the eleventh plea filed by the defendant. The plea is as follows:

"And for further plea to the declaration herein filed

against the defendant, the Three States Lumber Company comes and says the plaintiff ought not to have or maintain its action herein, because the only possession, if any, which the defendant ever had, which it denies, of the lumber which it is charged it converted to its own use, was by virtue of a certain action of replevin instituted by it in the circuit court of the United States for the Western District of Tennessee against the said plaintiff for 250,000 feet of cottonwood lumber loaded on the barge Jennie near Reel Foot Landing, in Lake county, Tennessee.

"In said action a replevin bond was executed by the Three States Lumber Company and a writ of replevin was issued and attempted to be levied on 250,000 feet of lumber on said barge; there being then on said barge about 350,000 feet. The officer serving the writ executed the same by handing a notice to the watchman in charge thereof, notifying all persons that he attached 250,000 feet of the lumber on said barge, and warning all persons not to interfere with same, and also notifying said watchman that he delivered said lumber to Scroggins, as agent for the Three States Lumber Company; and the defendant avers that it was only by virtue of the execution of the writ that it came into possession of the remainder of the lumber on the barge in excess of 250,000 feet, if it ever came into possession, which it denies.

"And this defendant avers that thereafter the said replevin suit proceeded to judgment, and recovery was

had against the plaintiff and its bondsmen, on account of the lumber which came into its possession by reason of the execution of said writ of replevin, for the amount of $3,882.61, which said judgment has been paid and fully discharged by this defendant; and therefore this defendant says that no recovery can be had in this cause because of any wrong done the plaintiff in the manner in which said levy was made, or because of the said alleged conversion, wrong, and injury as set out in said declaration. The plaintiff makes profert of the bond, writ returned thereon, declaration, pleas, and judgment in said action."

The demurrer of the plaintiff, Blanks, to this plea, which was sustained by the trial judge, is as follows:

"First. Because the matters and things in said plea mentioned have relation to other property than that in the plaintiff's declaration mentioned.

"Second. Because the plea does not aver that the possession or conversion of the lumber described in plaintiff's declaration herein was involved or decided in said action of replevin in the plea mentioned."

It is insisted on behalf of the Three States Lumber Company that the judgment in the replevin case was a complete adjudication of the liability of the defendant because of the wrongful levy of the writ, and that it was of no importance that no claim was made for the value of the overplus in the replevin suit. It is said that the writ ran against 250,000 feet of lumber, but that something over 400,000 feet were seized; but

how much was seized, its value, and all damages arising from the seizure, were facts which were determined in the replevin suit. Finally, it is said the judgment in the replevin suit is conclusive of all rights which might have been raised in that particular action—citing *Cromwell* v. *Co. of Sac,* 94 U. S., 351, 24 L. Ed., 195; *Arnold* v. *Kyle,* 8 Baxt., 319; Shannon's Code, sec. 5144.

In order to properly decide this question, it is necessary to understand precisely the issue involved in the replevin suit, as well as that presented in the present action.

The present action is brought to recover damages for the conversion of 175,000 feet of lumber levied on under the writ of replevin in excess of the amount called for in that writ. The action of replevin was brought to recover the possession of 250,000 feet of lumber. The only issue presented in the action of replevin was whether the plaintiff was entitled to the possession of the specific amount of lumber called for in that writ, and that action did not involve the trespass of the Three States Lumber Company in taking and converting other lumber. The excessive levy made by the sheriff at the instance of the plaintiff's agent in executing the writ of replevin was not involved, and could not have been adjudicated, in the action of replevin. Hence the judgment in that case is not a bar to the present action. *Hall* v. *Durham,* 113 Ind., 327, 15 N. E., 529; *Kramer* v. *Matthews,* 68 Ind., 172.

The second assignment of error is based on the action

of the trial judge in sustaining the demurrer of the plaintiff, Blanks, to the twelfth plea of the defendant. Said plea avers that:

"The plaintiff ought not to have or maintain its action herein, because this identical cause of action was determined in the case wherein the said Blanks was plaintiff, and Thomas H. Baker, United States marshal, was defendant, in the circuit court of the United States for the Western District of Tennessee.  In said cause Baker was sued in his official capacity as United States marshal for the identical wrong and injury herein sued for, to wit, the improper levy under the writ of replevin on the lumber in controversy, and such proceedings were had therein that the cause proceeded to final judgment in favor of said Baker.  This defendant avers that it never had any connection with said lumber, except by the action of said Baker in the execution of said writ of replevin, and it now pleads said judgment in said suit of *Blanks* v. *Baker* in bar of this action, and makes profert of writ, declaration, plea, and judgment therein."

The demurrer interposed on behalf of plaintiff, Blanks, to the plea aforesaid, was as follows:

"First.  That the suit in said plea mentioned and described was an action *ex contractu* on the bond of the United States marshal, Thomas H. Baker.

"Second.  The said action was not between the plaintiff and the defendant herein, but between the plaintiff and third persons.

"Third. Because the defendant has not shown that it was a party, or in privity with any of the parties, to said suit."

It is said on behalf of the Three States Lumber Company, in support of its plea, that the record in *Blanks* v. *Baker*, shows a suit against United States Marshal Baker for levying the writ of replevin and wrongfully taking possession of this identical lumber. It is said that action was based on the identical tort for which this suit is brought, and the plea proceeds on the idea that the judgment in favor of the United States marshal in that case is conclusive against the right of the plaintiff to recover in this case. It is conceded that in the original action Blanks sued the United States marshal and his bondsmen for making an excessive levy under the writ of replevin, and the trial of that case resulted in judgment in favor of the defendants. It is argued here that the judgment in that case in favor of the United States marshal inures to the benefit of the Three States Lumber Company in the present action. It is said the Three States Lumber Company, if liable at all, is responsible because of the acts of the United States marshal under the writ, and that a judgment exempting the marshal from liability must also discharge the Three States Lumber Company. It is argued that it is not important that the suit against the marshal was *ex contractu* against him and his bondsmen, and that the present action is sounding in damages for a tort.

We are unable to agree with the contention of coun-

sel for the Three States Lumber Company that the judgment in favor of the marshal is conclusive against Blanks. In the first place, the defendant Three States Lumber Company was neither a party nor a privy to that action, and, moreover, the cause of action itself is different. Moreover, the owner of property which has been wrongfully converted may pursue all persons who participated in the wrongful act, either jointly or separately, until satisfaction is secured from some one of them. It may be conceded that, if Blanks had recovered a judgment against Baker, the United States marshal, for the full value of the lumber converted, that judgment would not have defeated a right of action against the Three States Lumber Company. If, however, such a judgment had been secured and had been paid, that would have been a full acquittance of all the joint tortfeasors or wrongdoers. As already stated, the action of Blanks against the United States marshal, Baker, resulted in judgment in favor of the marshal, and it is claimed that, notwithstanding the Three States Lumber Company procured this excessive levy to be made, and afterwards subjected it to the perils of the storm, whereby it was sunk, and thereafter raised it and libeled it, causing it to be sold for salvage, it would not be liable, because of the exoneration of the United States marshal who made the levy. In support of the contention made on behalf of the Three States Lumber Company, the text from 23 Cyc., 1213, is cited:

"Where suit is brought against one or two joint

Lumber Co. v. Blanks.

wrongdoers, and judgment is given for defendant on a defense which shows that the plaintiff could have no cause of action against any of them, such judgment may be pleaded in bar by another of the tort-feasors when sued in a subsequent action."

It appears that the article on Judgments in 23 Cyc., was prepared by Mr. Black, the author of the work on Judgments, wherein he lays down the rule on this subject as follows:

"In actions of tort, where the wrong is joint and several, and the plea of one of the defendants is such as shows the plaintiff could have no cause of action against any of them, if the plea is found against the plaintiff, it operates to the benefit of the defendants."

We think the rule announced by Mr. Black in his work to Judgments is a more correct statement of the law and is supported by the greater weight of authority. *Williams* v. *McGrade*, 13 Minn., 46 (Gil., 39). In the latter case an action was brought against all the parties, and in that suit the plea of one defendant showed the plaintiff had no cause of action against any one, and that plea was found in favor of the defendant. It was held that no judgment could be rendered against any of the defendants.

2 Tidd's Practice, 895, was cited, in which the rule is thus stated:

"In cases of tort, as trespass, etc., where the wrong is joint and several, the distinction seems to be this:

That, where the plea of one of the defendants is such as shows the plaintiff could have no cause of action against any of them, then, if this plea be found against the plaintiff, it shall operate to the benefit of all the defendants, and the plaintiff cannot have judgment or damages against those who let judgment go by default. But, when the plea merely operates in discharge of the party pleading it, then it shall not operate to the benefit of the other defendants; but, notwithstanding such plea be found against the plaintiff, he may have judgment and damages against the other defendants"— citing 2 Ld. Raym., 1372; 1 Str., 610; 2 Modern, 217.

This rule is in analogy to the well-established rule of chancery practice in this State that when a joint defendant answers a bill, and by proof removes the matter of equity set up against him and the other defendants, who do not answer, there can be no decree against the defendants so failing to answer. *Hennessee* v. *Ford,* 8 Humph., 500; *Butler* v. *Kinzie & Franklin,* 90 Tenn., 31, 15 S. W., 1068; *Dunscomb* v. *Wallace,* 105 Tenn., 386, 59 S. W., 1013; *Phillips* v. *Hollister,* 2 Cold., 271.

It would be an anomalous doctrine to establish that one of several joint tortfeasors, when sued, could plead as an estoppel by judgment that another joint and several tortfeasor had been sued in another action and exonerated. A wrong committed by a number of persons is several in character, and only joint because each is liable for the acts of all. *Ayer* v. *Ashmead,* 31 Conn., 447, 83 Am. Dec., 154; *Lovejoy* v. *Murray,* 3

Wall., 1, 18 L. Ed., 129; *Litchfield* v. *Goodnow's Admr.*, 123 U. S., 551, 8 Sup. Ct., 210, 31 L. Ed., 199.

The second assignment must therefore be overruled.

The third assignment of error is based on the action of the trial judge in admitting the following evidence:

Counsel for plaintiff asked the witness Burnley the following question:

"Do you know whether, after this barge was levied on and before it was sunk, there were any boats by there to take that barge to Cairo?

"A. Yes, sir; two boats.

"Q. Did you hear anything between the boats and the watchman on the barge?

"A. Yes, sir.

"Q. Well, what?

"A. I heard him tell the captain that the barge was attached, and he couldn't let it go."

There was evidence tending to show that, when the United States marshal levied on the lumber and placed Scroggins in possession of it as the representative of the Three States Lumber Company, the latter placed the lumber in charge of Burnley, the bargeman, and directed him to hold the barge and contents for Scroggins, and not permit it to be moved. It appears that on the trial Scroggins denied that he had put the bargeman in charge of the property; but Hawkins, Burnley, and Matthews, three witnesses, testified that the bargeman had been placed in possession of the barge and lumber by Scroggins. It thus appears that the bargeman be-

came the agent of the Three States Lumber Company
while in charge of that barge, and the question present-
ed on the exception to this evidence is whether or not
his declaration while in charge of the lumber was ad-
missible in evidence against his principal.   The objec-
tion to the evidence was not based upon the character
of the agent who made the statements, but upon the
ground that the statements were made some time after
the levy had been made.   The exception, therefore, did
not go to the character of the agent, but to the time
when his statements were made.   We think these state-
ments were competent, as tending to show the Three
States Lumber Company was claiming the exclusive
custody of the barge and its contents.

"Where the acts of the agent will bind the principal,
then his representations, declarations, and admissions
respecting the subject-matter will also bind him, if made
at the same time and constituting part of the *res gestae*."
*Gavin* v. *Walker*, 14 Lea, 646.

"The declarations of the agent, to be admissible
against the principal, must be declarations accompany-
ing the act and explanatory of it." *Southern Life Ins.
Co.* v. *Booker*, 9 Heisk., 607, 24 Am. Rep., 344.

"The acts and declarations of an agent during the
continuance of the agency, in the lawful prosecution of
the business of the principal respecting the matter in
litigation, are admissible in evidence to bind the prin-
cipal." *Sewanee Mining Co.* v. *McMahon*, 1 Head, 582;
*Packet Co.* v. *Clough*, 20 Wall., 540, 22 L. Ed., 406;

*Railroad Co.* v. *O'Brien,* 119 U. S., 99, 7 Sup. Ct., 172, 30 L. Ed., 299.

It appears from the evidence that the declarations of the bargeman sought to be excluded expressly related to the business for which he had been employed, and were made in the course of his employment. It is altogether too circumscribed a view of the question to limit the agent's declarations to the moment of the levy of the writ. The bargeman was afterwards intrusted with the custody and possession of this property as the representative of the Three States Lumber Company, and all that he said explanatory of his possession and why the barge could not be towed to Cairo by the tugboats was admissible in evidence.

This assignment of error will therefore be overruled.

The fourth assignment of error is that the court erred in charging the jury as follows:

"That where a person or corporation wrongfully takes possession, without authority, of the personal property of another, and converts such goods or chattels to his or its own use by exercising dominion over it against the right of the owner, or does any act with the intention of impugning for a moment the plaintiff's general right or dominion over the property, such acts would amount to conversion and the person or corporation would be liable in damages to the amount of the property to the owner."

It is said there was no evidence on the trial that

the Three States Lumber Company at any time chal-
lenged the title of the plaintiff to the lumber in con-
troversy, and hence the charge of the court was inap-
plicable to the facts in the case. For the same reason
it is assigned as error that the court gave in charge
the special instruction asked by the plaintiff, Blanks,
as follows:

"And if the jury believe from the evidence that there
was at that time on said barge 150,000 feet of lumber
over and above the amount named in said writ, and
that the agent of the defendant took possession of said
barge and such other lumber, and assumed dominion or
control thereover, with the intent of impugning or deny-
ing the right of the plaintiff to presently exercise domin-
ion over the same, this was in law a conversion by the
defendant company of such other lumber than the 250,-
000 feet sued for in the action of replevin wherein the
present defendant was plaintiff; and the plaintiff should
be entitled to a recovery, and you should so find."

It is said this charge was wholly inapplicable to the
facts, since the evidence showed the Three States Lum-
ber Company disclaimed any ownership of the lumber
in controversy or any intention to take it into possession
or exercise dominion over it, except as it was a part
of the mass of lumber wrongfully commingled by the
act of the plaintiff. It will be observed that this as-
signment of error does not challenge the correctness of
the abstract statement of law embodied in the proposi-
tions just quoted; but the objection is there were no

facts disclosed in the proof which warranted such instructions, and they were therefore misleading. The insistence on the part of the plaintiff below was that Scroggins, as the agent and representative of the Three States Lumber Company, through the United States marshal, took possession of the barge and its entire load of lumber. Hawkins, the deputy United States marshal, testified that he told Mr. Scroggins:

"It was his duty to separate that lumber and take the 250,000 feet off.

"Q. What did Scroggins say?

"A. He said it was too much trouble, and too much work, and too much expense, and he didn't want it done."

Hawkins further testified that he instructed the bargeman "not to let any one have any part of that barge load of lumber without the consent of the Three States Lumber Company's agent."

The witness was then asked:

"Q. How came you to give those instructions to the barge keeper about the whole barge of lumber? On your own motion?

"A. No, sir. Mr. Scroggins' orders.

"Q. Mr. Scroggins directed you?

"A. Yes, sir.

"Q. Was he present when these instructions were given?

"A. Yes, sir; me and him and the barge keeper was all there together all the time."

On. cross-examination the witness said:

"He [Scroggins] told me what to do, and to go down there and attach 250,000 feet of that lumber, and not to take it off the barge, but to leave it on the barge, but that he was going to take it to Cairo, all of it."

Blanks testified:

"Scroggins did tell me he had served the writ during my absence and had taken possession of the barge of lumber, because he could not hold the marshal there any longer."

Matthews testified:

"We met Mr. Scroggins in the road, and he said to Mr. Burnley that he had attached that barge load of lumber and had put a notice on it, and had notified that watchman to hold it there subject to his orders—to hold it until further notified. Notify any boats that might come up there that the barge was attached, and not to let it leave there without his knowledge."

Burnley testified:

"I met him [Scroggins] in the road, I and Mr. Matthews. We were in the buggy together, and he and the marshal were coming from the barge, and I was going to the barge, and he told me he had been down there and attached that barge. That was what he said to us."

We think these quotations sufficient to show there was evidence to the effect that the Three States Lumber Company, through its agent, took charge of the whole barge load of lumber and left it in the custody of the

bargeman as its agent. The jury by their verdict have settled this controverted question of fact in favor of the contention of the plaintiff below, and there is ample testimony to support the finding. These facts so found make out a case of conversion, upon the principle decided in *Scruggs* v. *Davis,* 5 Sneed, 261; *Bell* v. *Cummings,* 3 Sneed, 275; *Childress* v. *Ford,* 1 Heisk., 463; *Elmore* v. *Brooks,* 6 Heisk., 45.

The fifth assignment of error is based upon the refusal of the trial judge to submit to the jury the following special instruction asked on behalf of the Three States Lumber Company as follows:

"Even though the jury should find that the lumber in controversy was also seized under the writ of replevin and delivered to the agent of the Three States Lumber Company, yet, if they should further find that because of the inclement weather, or because of the assent of the said Blanks, the 250,000 feet of lumber levied on was not separated from the lumber in controversy before the barge sank, your verdict should be for the defendant."

It is said that this special instruction was rendered necessary because in the general charge the court had told the jury:

"If you find from the evidence that the said marshal, Hawkins, did not separate the 250,000 feet of lumber for which the writ of replevin had been issued from the other lumber, etc., your verdict should be for the plaintiff."

We think this instruction was properly refused. There is no evidence in the record tending to show that when the barge load of lumber was levied on the weather was so inclement that the separation of the lumber was thereby prevented. As we understand the record, the weather was not inclement at the time the levy was made, and no such condition prevailed for several days after the levy. The effect of the special request was to instruct the jury that, although the conversion had taken place before the intervention of the inclement weather, if afterwards, on account of the weather, there was no separation of the lumber before the barge sank, this fact would exonerate the company from liability for the previous conversion. This was not a sound proposition of law. The court did instruct the jury that the company was entitled to a reasonable time within which to make the separation, and the evidence does not show that the company's agent was prevented from making the separation by the weather. The special request was properly refused.

The judgment will be affirmed.